# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 02 C 9502 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| GUADALUPE FELIX-FELIX ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Guadalupe Felix-Felix ("petitioner" or "Guadalupe") has filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons explained below, that petition is denied.

### Background

In September 1997, Drug Enforcement Administration ("DEA") agents conducting surveillance of a known center for drug transactions in Cicero, Illinois, observed Guadalupe and his cousin Francisco Felix-Felix ("Francisco") making calls from pay phones and conducting brief meetings with other individuals in and around that area. At one point, the agents followed the two Felix-Felixes to an apartment in Cicero, where the officers asked for and received consent from Guadalupe and Francisco to search the premises. Two handguns and $6,100 in cash was discovered and seized. They made no arrests at the time, and the September 1997 event is not at issue in this case.

Several weeks later, agents observed Guadalupe and Francisco at a currency exchange and followed them to a house at 211 Vintage Road in Buffalo Grove, Illinois. A few months later, on April 1, 1998, they followed their lead on the house and interviewed some of the neighbors. The

neighbors confirmed that Guadalupe and Francisco frequented the Buffalo Grove residence. The neighbors also mentioned that they rarely saw Guadalupe and Francisco outside the home, but they often saw them driving in and out of the garage in a white Jeep.

At about 1:45 p.m. the next day, DEA agents conducting surveillance of the Buffalo Grove residence saw Guadalupe leave the garage driving a rented maroon van. The agents also saw a parked white Jeep Wrangler inside the garage. Agents followed the maroon van to a McDonald's fast food restaurant in Hickory Hills, Illinois. While they watched, Guadalupe exited the van, went inside to have a meal, walked to a nearby pay phone, and placed several calls. He waited by the telephone until a man, later identified as Eduardo Vargas, approached and looked inside the van. Vargas spotted Guadalupe, walked to the pay phone, and shook hands with him. Vargas then climbed into the van alone, and drove it about a mile away, as agents followed. Without making any stops, Vargas returned to the McDonald's parking lot and placed a telephone call from the same pay phone.

In the meantime, DEA agents had continued surveillance of Guadalupe, who had left the McDonald's and walked to a nearby Walgreen's drug store. After Vargas used the pay phone, Guadalupe left the drug store and met Vargas at the McDonald's. The two then left the McDonald's together and hurriedly walked to the rear of the building. As they walked away from the McDonald's, Guadalupe bent down and placed the van keys on the ground.

After a glance through the van windows revealed a black suitcase and a box for a measuring scale, the agents approached the two men, who by this time had walked into a residential neighborhood south of the shopping center, and asked them if the van belonged to one of them. Initially, they both denied ownership, but after further questioning, Guadalupe admitted that he had

been driving the van earlier that day. Agents then brought Guadalupe and Vargas back to the McDonald's restaurant. Guadalupe took the agents to the parking lot area where he had placed the keys to the van on the ground, and he gave the keys to the agents. At some point, either before or after returning to the parking lot, Guadalupe gave the agents written consent, in Spanish, to search the van.

The police conducted their search with the help of a drug-sniffing dog. As soon as the dog jumped into the back of the van, he provided a positive alert for the presence of drugs in the box and the suitcase. A search of the box and the suitcase revealed 50 kilograms of cocaine (confirmed by a field test). The agents then informed Guadalupe and Vargas of their *Miranda* rights and formally arrested them.

After Guadalupe's arrest, DEA agents returned to the house in Buffalo Grove and recommenced their surveillance while they waited for a search warrant. At approximately 9:15 p.m., agents observed Francisco pull into the subdivision driving a white Jeep like the one the agents observed earlier in the garage. When Francisco turned into his cul-de-sac and saw the agents' cars, he sped past the agents and did not stop at the house. They pursued him until he was forced to stop at a dead-end street. The agents approached Francisco and asked him, in Spanish, why he was driving in the area and why he did not pull into the garage of the house. He gave some evasive answers, but before too long he signed a written consent form permitting the agents to search the house and garage; he also gave them the garage door opener and keys to the house.

Two agents stayed outside with Francisco while the search was conducted. Soon after the search began, an agent came back out and reported that he had found syringes and pharmaceuticals. Asked about these items, Francisco denied ownership. The agents then discovered a suitcase in the

3

foyer closet containing 50 kilograms of cocaine. At this time, the agents advised Francisco of his rights (in Spanish) and arrested him. He requested counsel, at which point all questioning ceased.

On April 22, 1998, Guadalupe, Francisco and Vargas were all indicted on one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and two counts of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Guadalupe filed a motion to suppress the statements he made during the agents' questioning of him and the evidence obtained from the search of the van. He argued that the seizure was an arrest for which probable cause was required. Guadalupe further urged that the evidence should be suppressed because the DEA agents had failed to advise him that, as a citizen of Mexico, he had a right to communicate with a consular officer of his country pursuant to Article 36 of the Vienna Convention on Consular Relations, art. 36, April 24, 1963, 21 U.S.T. 77.

On September 28, 1999, then district court Judge Ann Claire Williams denied Guadalupe's motion and his accompanying request for an evidentiary hearing. The court found that Guadalupe's confrontation with the agents did not violate the Fourth Amendment. Additionally, the court found that while the Vienna Convention had been violated, Guadalupe had not shown that the violation warranted exclusion of the evidence. After this ruling, Guadalupe and Francisco (whose motion to suppress was also denied) entered guilty pleas on all three counts, reserving their rights to appeal the district court's denial of their suppression motions. After the entry of the pleas, the case was transferred from Judge Williams to this court. On July 13, 2000, this court denied Guadalupe's request for a reduction in his offense levels based on his minor role in the conspiracy as well as his acceptance of responsibility, and sentenced him to 151 months on each count, to run concurrently, and five years of supervised release.

4

On appeal, the Seventh Circuit affirmed the district court's decision on the suppression motions and the sentencing.

In his Section 2255 motion, Guadalupe alleges the following claims: (1) the conviction was obtained by a plea of guilty which was not knowing, intelligent, and voluntary due to a lack of understanding of the nature of the charge and the consequences of the plea; (2) denial of effective interpreting assistance; and (3) denial of effective assistance of counsel.[1]

**Analysis**

Under 28 U.S.C. § 2255, federal prisoners can challenge the imposition or length of their detention if their conviction or sentence has been founded on an error that is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1995); 28 U.S.C. § 2255. If the court determines that any of these errors infected the judgment or sentence, the petitioner's conviction will be vacated or set aside, and the petitioner will be discharged, resentenced, or granted a new trial. *Id.*

Respondent argues that all three of Guadalupe's claims are essentially claims of ineffective assistance of counsel. The court agrees. And, to the extent Guadalupe attempted to bring claims other than ineffective assistance of counsel (such as a direct claim that his plea was not knowing and voluntary and that he did not receive proper translation assistance), he is barred from doing so because he failed to raise them before the Seventh Circuit on appeal. *Belford v. United* States, 975

---

[1] Guadalupe's petition lists the following as a fourth claim: the sentencing judge was unlawfully biased against deportable Mexican defendants, a group that includes Guadalupe. However, in his February 26, 2007 reply, Guadalupe states that the claim is now a "mute [sic] point" and the court considers the claim dropped by Guadalupe. The court likewise denies as moot Guadalupe's request for discovery related to this claim.

5

F.2d 310, 313 (7th Cir. 1992) (nonconstitutional issues that could have been brought but were not raised on direct appeal are not reviewable in a Section 2255 motion; constitutional issues not raised on appeal may not be brought in a Section 2255 motion unless petitioner can show cause and prejudice), *rev'd on other grounds*, 26 F.3d 717, 719-720 (7th Cir. 1994). By failing to raise these claims on appeal, Guadalupe has procedurally defaulted them. Morever, Guadalupe has not shown cause[2] and prejudice, or has any evidence of actual innocence, which would allow the court to bypass the procedural bar. However, claims of ineffective assistance of counsel may be brought for the first time in a Section 2255 motion, *Massaro v. United States*, 538 U.S. 500, 504 (2003), so Guadalupe's claims of his counsel's ineffectiveness may be considered by this court.

To establish ineffective assistance of counsel, Guadalupe must demonstrate: (1) that his attorney's performance was deficient; and (2) that such representation prejudiced his case. *Precin v. United States*, 23 F.3d 1215, 1218 (7th Cir. 1994) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The first prong is satisfied by showing that counsel's performance fell below the "objective standard of reasonableness" guaranteed under the Sixth Amendment. *Barker v. United*

---

[2] The only attempt Guadalupe makes to explain his failure to raise his claims before the Seventh Circuit were his statements that he "was not aware of [the claims]" and he "had to wait until bilingual assistance became available." Sec. 2255 mot. at 6. Guadalupe's claim that he was not aware of the factual nature of his claims is nonsensical as he must have been aware at the time of his plea whether or not he understood the charges brought against him. And, with respect to his claim that he had no one to assist him in translating from Spanish to English, such a circumstance does not qualify as "cause" in the habeas context. *See United States ex rel. Galvan v. McVicar*, No. 99 C 1614, 2000 WL 1780351, *5 (N.D. Ill. Dec. 4, 2000) (citing *Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (8th Cir. 1988)); *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (petitioner's "unfamiliarity with the English language is insufficient to establish cause to excuse his procedural default because such alleged unfamiliarity is not external to his defense") (internal citations omitted).

*States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 687). Under the prejudice prong, in the context of a guilty plea, a petitioner must establish with objective evidence a reasonable probability that but for counsel's advice, the defendant would not have accepted the plea. *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996).

In his first claim, Guadalupe argues that his "plea of guilty was not entered knowingly, intelligently and voluntarily." Sec. 2255 mot. at 5. As explained above, the only possible claim that may be brought by Guadalupe is one for ineffective assistance of counsel. The court therefore reads this claim as one alleging counsel's ineffectiveness based on a list of errors committed by his defense lawyer, including "indifferent conduct," a general lack of communication by the attorney, failure to bring an interpreter to their attorney-client meetings, failure to explain the charges against him, and providing insufficient information regarding the plea agreement (even though there was no written plea agreement). Implicit in Guadalupe's arguments is the notion that had he understood all aspects of the plea agreement, he would not have entered into it.

A review of the October 18, 1999 transcript from Guadalupe's change of plea hearing ("Transcript") contradicts Guadalupe's current challenge. Guadalupe and Francisco appeared before Judge Williams to withdraw their "not guilty" pleas and enter conditional guilty pleas on all counts, reserving their rights to appeal the district court's denial of their respective suppression motions. Guadalupe was represented by his attorney, Michael B. Cohen. Guadalupe and Francisco pled guilty without the benefit of a written plea agreement. At the change of plea hearing, Judge Williams placed Guadalupe under oath and instructed and questioned him at length with the assistance of a Spanish language interpreter. Transcript at 2. First, the court explained that Guadalupe had the right to assert his Fifth Amendment right to remain silent which Guadalupe waived. *Id.* at 4. Next, the

7

Court questioned Guadalupe to determine whether he was competent to plead guilty. *Id*. at 6-9. At the end of this questioning, the court concluded that Guadalupe was "competent to offer [a] plea[] of guilty." *Id*. at 9. Next, the court asked Guadalupe whether he had enough time to speak with his lawyer about the case. *Id*. at 11. Guadalupe responded that he had, and stated on the record that he was satisfied with the advice and efforts that his lawyer had made on his behalf. *Id*.

After Guadalupe stated that he was satisfied with his lawyer's performance, Judge Williams asked Guadalupe if his lawyer had explained the charges leveled against him. *Id*. at 13. Again, Guadalupe responded affirmatively. *Id*. The court specifically asked Guadalupe if an interpreter was used to explain the charges, and again Guadalupe responded affirmatively. *Id*. The court also exhaustively questioned Guadalupe's lawyer about the manner in which he explained the charges to Guadalupe. *Id*. at 15-16.

Next, the court reviewed all Guadalupe's trial rights, covered the penalties he faced, and discussed how the sentencing guidelines operated. *Id*. at 17-26, 29-34. Guadalupe expressly acknowledged that he understood that he was waiving his trial rights. *Id*. at 23. After determining that Guadalupe fully understood his rights and the implications of pleading guilty, the judge directed the prosecutor to state what the government would have proved at trial. *Id*. at 36-39.

After the prosecutor proffered what the government would prove at trial, Guadalupe stated that the government's evidence was accurate. *Id*. at 39-40. When asked by the court if he intended to deliver 50 kilograms to one of his co-conspirators, Guadalupe answered "yes." *Id*. at 38. Based on Guadalupe's responses, the court found that Guadalupe's plea was knowing and voluntary, and accepted the guilty plea as to all counts of the indictment. *Id*. at 40-41.

The Seventh Circuit has consistently held that a defendant's statements at plea hearings are presumed to be true. *See United States v. Jones*, 381 F.3d 615, 618 (7th Cir. 2004); *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987) ("Rational conduct requires that voluntary responses made by a defendant under oath before an examining judge be binding. Such a requirement is consistent with reason and common sense."); *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999) ("Entry of a guilty plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard."). Rule 11 "provides a thorough hearing to determine the voluntariness and intelligence of guilty pleas, and . . . defendants afforded such a hearing should not be easily let off the hook when they feel like changing their minds." *United States v. Coonce*, 961 F.2d 1268, 1276 (7th Cir. 1992).

Having reviewed the transcript from the change of plea hearing, the court agrees with the Seventh Circuit that Judge Williams' handling of the change of plea was "thorough." *United States v. Felix-Felix*, 275 F.3d 627, 632 (7th Cir. 2001) ("After a thorough hearing, the court accepted the pleas . . ."). With the assistance of an interpreter, Judge Williams carefully laid out the charges and the possible sentences Guadalupe faced. Guadalupe testified under oath that he understood the charges brought against him, that he understood the rights he was giving up, that he was satisfied with the assistance his lawyer provided, and that he met with his lawyer with the assistance of a translator. He specifically affirmed that he had discussed the charges with his lawyer, that he understood each charge and that he was read the charges in Spanish by an interpreter. He also affirmed the accuracy of the government's offer of proof. Guadalupe never informed the court that he was dissatisfied with his counsel's performance, or that he did not fully understand the charges brought against him.

9

Guadalupe makes no compelling argument to rebut the presumption of truth given to his statements at the plea hearing. He states that he answered the court's questions in the way he did because he "felt very ignorant" and "because [trial counsel] instructed me to be cooperative in court, that otherwise my plea might not be accepted and I would receive a lengthier prison term." Decl. at ¶ 9. But this explanation, that he merely went along with what his lawyer told him to do, is not the type of compelling reason which would allow him to rebut the presumption of truth attributed to his sworn testimony. *United States v. Henry*, 933 F.2d 553, 561 (7th Cir. 1991) (rejecting claim of ineffective assistance of counsel where defendant, despite sworn testimony to the contrary, argued that he pled guilty because he did not understand the plea, met only briefly with his lawyer, and was told by his lawyer to answer "yes" to all the judge's admonitions). In addition, Guadalupe testified that no one forced him to plead guilty and affirmed that his decision to plead guilty was entirely voluntary. Transcript at 36. While Guadalupe indicates that he did not understand, because of his limited education, some of the words used by the court (through the translator), he fails to provide any examples of his confusion. Guadalupe's responses at the plea hearing contradict his allegations that he did not understand the plea agreement process and the terms of the agreement. To the contrary, Guadalupe's responses directly affirmed that his plea was knowing and voluntary. Based on his statements at the plea hearing, the court finds that Guadalupe has failed to show that his trial counsel's conduct fell below an objective level of reasonableness. *Lobano-Rios v. United States*, No. 04 C 5382, 2005 WL 2648681, *3 (N.D. Ill. Oct. 11, 2005) (dismissing ineffective assistance of counsel claim where native Spanish-speaking petitioner made clear during plea hearing that he understood charges against him and was satisfied with counsel's representation of him). Nor can he show, in light of the detailed Rule 11 hearing, that he was prejudiced by any alleged deficiency

on his lawyer's part. For these reasons, Guadalupe's first claim of ineffective assistance of counsel fails.

In his second claim, Guadalupe argues that he did not receive "effective interpreting assistance during all significant times." Sec. 2255 mot. at 5. Again, the court understands this to be a claim of ineffective assistance of counsel based on counsel's failure to provide an interpreter during all meetings. Guadalupe maintains that the times he and his attorney communicated with an interpreter were limited to court appearances only and these discussions were brief. *Id*. He states that nothing productive resulted from these discussions. *Id*. The gist of this claim seems to be that Guadalupe did not understand his case and the plea because his lawyer failed to provide a translator during all their meetings.

A review of the change of plea transcript seriously contradicts Guadalupe's current contentions.

| | |
|---|---|
| THE COURT: | Do you understand that in the indictment, you are each charged in a three-count indictment with three different charges. That's what you are charged with, not what you're pleading to, but what you are charged with. |
| THE DEFENDANTS: | Yes. |
| THE COURT: | And have the charges been read to you by the interpreter? |
| THE DEFENDANTS: | Yes. |
| THE COURT: | And did you have any trouble understanding the charges? |
| THE DEFENDANTS: | No. |
| THE COURT: | And did each of you talk with your lawyers about what you were charged with doing in the indictment? |
| THE DEFENDANTS: | Yes. |

Transcript at 13. In the end, the court concludes that Guadalupe's claim is not credible. As detailed above, Guadalupe testified under oath that an interpreter read the charges to him, that he understood the charges, and that he talked to his lawyer about the charges. Even if his lawyer were ineffective in failing to provide a translator at every meeting he had with Guadalupe, there is no prejudice to Guadalupe, who swore under oath that he understood the charges, the plea, the evidence and the possible sentences. This claim fails.

Guadalupe's final claim is that he did not receive effective assistance of counsel during his criminal proceedings based on his attorney's failure to communicate with him. As Guadalupe admits in his motion, "Many of the pertinent counsel facts are contained within other issues here raised, i.e., invalid guilty plea, ineffective interpreting." Sec. 2255 mot. at 5. To the extent this claim is duplicative of the two discussed earlier, it is dismissed for the reasons explained above.[3] However, in his declaration attached to his Section 2255 motion, Guadalupe arguably raises an additional ground for his claim of ineffective assistance of counsel. In that declaration, he states that his counsel was ineffective in failing to discuss the "likelihood" of the imposition of a monetary fine. Decl. at ¶ 8. Guadalupe again cannot escape the fact that he cannot show prejudice. Even if the court were to assume that his trial counsel failed to inform Guadalupe about the possibility of a monetary fine and that counsel's failure was constitutionally deficient, there is still no prejudice here. At the plea hearing, Judge Williams warned Guadalupe that he faced a prison term of ten years to life, a fine up to $12 million, and supervised release of five years to life. Transcript at 25. She

---

[3] In his reply brief, Guadalupe makes a new argument that his counsel was ineffective for failing to commit earlier to a plea agreement, so that he might have gotten the benefit of acceptance of responsibility at sentencing. Arguments raised for the first time in a reply brief are deemed waived. *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992).

then asked him, "Do you understand that?" and he answered, "Yes." *Id.* As above, Guadalupe's sworn testimony indicates that he understood that a large fine was possible, and this testimony directly contradicts any argument that he was prejudiced by his attorney's failure to discuss a fine with him.

Finally, the court denies Guadalupe's request for an evidentiary hearing. Section 2255 states that the court must hold a hearing "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief[.]" As discussed above, petitioner's own sworn testimony doomed his claims. As a result, no evidentiary hearing is necessary.

## Conclusion

For all the foregoing reasons, petitioner Guadalupe Felix-Felix's motion filed pursuant to 28 U.S.C. § 2255 is denied.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: April 10, 2009